## Case No. 15,267.

### UNITED STATES v. GROTENKEMPER.

[2 Bond, 140.] [1]

Circuit Court, S. D. Ohio. Oct. Term, 1867.

INTERNAL REVENUE—PENAL ACTION—VERDICT—POSSESSION OF SPIRITS—FRAUD—TRANSPORTATION BONDS.

1. This suit is prosecuted for the recovery of a penalty of $4 on each gallon of spirits alleged to be fraudulently removed or sold by defendant under that clause of section 9 of the act of July 13, 1866 [16 Stat. 101]. imposing such penalty; and the verdict in this case can not be for the alternative penalty of $500 provided for in that clause.

2. The only question for the jury is. whether the defendant had possession of the spirits, and sold or disposed of them. having knowledge of a fraud connected with them, and with the design of evading the tax to which they were subject.

3. The question whether the facts proved warrant the inference of fraud, charged by the United States, is exclusively for the jury.

4. Under said section of the statute referred to. to constitute the fraud charged, an intent to evade the payment of the tax must appear to the satisfaction of the jury, but such intent can only be inferred from the circumstances in proof.

5. If the jury find there was any fraudulent concert of action between the distiller, or other persons, and the defendant. in bringing the spirits into market without the payment of the tax, the fraud charged in the declaration is sustained.

6. Giving transportation bonds for the removal of spirits from a distiller's warehouse to a bonded warehouse, class B, did not authorize the sale of the spirits without the payment of the tax, and such sale would be in fraud of the law.

[This was an action by the United States against Henry Grotenkemper for penalties for violation of internal revenue laws.]

Durbin Ward, Dist. Atty., and Lewis H. Bond, for the United States.

John P. Jackson and Edgar M. Johnson, for defendant.

LEAVITT, District Judge (charging jury). There are some legal questions involved in this case which are important, and on which it is the duty of the court to state its views. This I shall endeavor to do with as much brevity as possible. If it were not for these questions of law, I should commit this case to the jury without comment or remark, leaving it to them to draw their own conclusions upon the facts in evidence. The declaration, as you are aware, is the statement of the plaintiff's cause of action, and is to be the guide of a jury in passing upon a case submitted to them. If the plaintiff in an action is entitled to a verdict, it can only be upon the grounds specifically set forth in his declaration.

In this case. the United States charge substantially in the declaration, in two different counts. that large quantities of whisky were shipped from a distillery in Kentucky un-

---

[1] [Reported by Lewis H. Bond, Esq.. and here reprinted by permission.]

der what are termed ":transportation bonds," and that the defendant came unlawfully and fraudulently into the possession of the whisky, and sold or disposed of it, knowing the legal tax had not been paid, and with intent to defraud the government. That is the substance of the first count. The second count charges the defendant with being in possession of the spirits, knowing they were subject to tax, and that the tax had not been paid. The period of time within which it is alleged these fraudulent transactions occurred, was from the 1st of July to the last of December, 1866. The district attorney concedes that the government can claim nothing but for frauds committed within the days named.

It is not my practice to detain a jury with a minute detail or exposition of the evidence in a case submitted to them. While it is incumbent on the court to state the law applicable to the case, it is the province of the jury to weigh and pass upon the facts in proof. I may remark here, that as to the main facts in this case, there is no controversy between the counsel for the parties. It appears that a distiller, whose name is Darling. was carrying on his business in the summer of 1866, at Prestonville, in the state of Kentucky. Connected with his distillery, as required by law, he had a bonded warehouse, designated, under the law and the regulations of the internal revenue department, as of the class A. The statute requires every distiller, immediately upon the distillation of spirits, to deposit them in that warehouse, and they then passed from his control to the custody and supervision of a government officer. It was the right of the distiller, however, upon a permit from the collector of the district, and giving bond with good sureties, the condition of which was not the payment of the tax on the spirits, but their prompt delivery to a warehouse of the class B, to be designated in the bond, to have the same removed to such warehouse. When the spirits were thus deposited, they could not be legally removed from the warehouse, or sold, without the payment of the tax imposed by law. The defendant Grotenkemper had, at the time, a bonded warehouse, of the class B, in the city of Cincinnati. Darling, the Kentucky distiller, shipped largely to the city during the summer of 1866. Some of these shipments were consigned to the defendant. and were deposited in his bonded warehouse, but the larger portion of the spirits, as I understand the evidence, was shipped to, or found its way to the warehouse of Harper & Son. commission merchants of Cincinnati. The amount of these various shipments will be ascertained by the jury, by reference to the abstract made by Hudnall, former collector of the revenue district in Kentucky. in which the distillery was located. These abstracts were made under the direction of the court, and may be safely relied on by the jury.

The claim of the government is, that by some fraudulent concert of action, the large quantity of spirits consigned to Harper & Son, though in their actual possession, was really sold by Grotenkemper, without the payment of the legal tax, and that the United States has thus been defrauded to that extent. The government has no available remedy on the transportation bonds, for the reason that the distiller Darling and his sureties are wholly insolvent. The tax, therefore, must be lost, unless the defendant can be held liable. It is claimed, by the district attorney, that there were 44.500 gallons of spirits shipped by Darling to Harper & Son, all of which was fraudulently sold by the defendant without the tax having been paid. The penalty claimed, and for which it is contended the defendant is liable, is four dollars on every gallon of these spirits. And for the recovery of this penalty this suit is prosecuted.

The suit is based on section 9 of the act of July 13, 1866. It is a long section, broad and comprehensive in its provisions, embracing various acts of commission and omission as frauds, and subjecting persons and property to heavy penalties and forfeitures. Without reciting the entire section, I will only refer to the clause on which this action is brought. It is in these words: "And any person who shall have in his custody or possession any such goods, wares, merchandise, or articles subject to tax, as aforesaid, for the purpose of selling the same with the intent of evading the payment of the taxes imposed thereon, shall be liable to a penalty of $500, or not less than double the taxes fraudulently attempted to be evaded." The jury will observe, that under this clause the penalty is in the alternative, being either a fixed sum or double the amount of the tax. The intention of this was doubtless that the government might proceed for the comparatively light penalty of $500, or the more severe penalty of the double tax, according to the circumstances and aggravation of the case. In this case the claim of the United States is the higher penalty, and if the jury find that the frauds charged are proved, their verdict must be for that penalty, and nothing more or less.

The important, indeed the only, question for the jury is, whether the defendant had the possession of the spirits in controversy, and sold or disposed of them, with the knowledge of any fraud connected with them, and with the intent of evading the tax to which they were subject. In the judgment of the court, to justify a verdict for the United States, the facts must warrant the conclusion that the spirits were infected with fraud, that defendant had some participation in the fraud, and sold or disposed of them with the intent to evade the tax. Whether the evidence warrants the conclusion of fraud, is a question exclusively for the jury, and is referred to them.

The district attorney claims, that if the spirits were distilled and removed from the distiller's warehouse for the purpose of sale, with the fraudulent intent of evading the tax, the defendant is liable to the penalty claimed, though he had no knowledge of, or participation in, the fraud. But as the clause of the statute to which I have referred, makes an intent to evade the payment of the tax a necessary element of the fraud as a basis of the penalty provided, I can not concur in the view urged by the attorney for the United States. Within the scope and operation of the clause referred to, if the defendant had no knowledge of any fraud, actual or intended, in connection with these spirits, it is not readily perceived that in selling or disposing of them he had the intent to avoid paying the tax on them.

In considering the question whether the defendant is implicated in any fraud in connection with these spirits, it will be the duty of the jury to weigh all the circumstances proved. Ordinarily, fraud is only made out by proof of such facts as lead with reasonable certainty to the conclusion of its existence. To illustrate my meaning, I will say, that if the jury believe there was concert of action between Darling the distiller, Harper & Son the warehousemen, and the defendant, by which the spirits were to be offered in market, and disposed of without payment of the tax, and were so disposed of by the defendant, the legal inference of fraud on his part would follow.

The counsel for the defendant have urged, that when the distiller gave bond for the transportation of the spirits from his warehouse A, to bonded warehouse B, and the proper permit for its removal obtained, that it then became what is termed free whisky and was legitimately in market without the actual payment of the tax, the reliance of the government being on the transportation bond as security for the tax. But there is no law which warrants this view. The transportation bond is conditioned for the delivery of the spirits at the bonded warehouse named, and upon such delivery the collector of the proper district looks to the payment of the tax before the spirits can be sold or removed. If, as in this case, the parties to transportation bond are all pecuniarily worthless, and if the distiller on the execution of the bond was at liberty to offer his whisky in market without paying the tax, it is obvious that a wide door for frauds upon the revenue would be opened. If, therefore, the defendant, knowing the fraud intended by the distiller, co-operated in it upon the false and illegal theory that the spirits were legitimately in market without payment of the tax, he can not thereby be relieved from the imputation of the fraud charged. Even if a construction had been given to the law, by officers of the revenue department, sanctioning such a course, it would be no justification of an intended or accomplished fraud. It is in accordance with the plain intention of the statute, that spirits should in no case be offered for sale without the payment of the tax, and any sale without such payment is in violation of law. The distiller has his option to pay the tax on its removal from his bonded warehouse, or give a transportation bond for its removal to a bonded warehouse, class B. If the latter course is pursued, the spirits can not be removed from the warehouse, or any disposition made of them until the tax is paid. Any other course would inevitably lead to the grossest frauds, and can not for a moment be tolerated. It would afford every facility for collusion between the fraudulent distiller and a dishonest and corrupt collector of the revenue. They had only to procure a transportation bond with parties fictitious or irresponsible, and the spirits would go into the market without the payment of the tax, and without any possible means of indemnifying the government for the loss of the tax.

But while this is the view of the court on this legal question, it is my duty to instruct the jury, that if this defendant came into the possession of the spirits, and removed or sold the same, without any knowledge of its fraudulent character, or any reasonable grounds of suspicion of fraud, he can not be held liable in this form of action. To incur the liability sought to be enforced by the government in this proceeding, it must appear, to the satisfaction of the jury, that the spirits were in the possession of the defendant, and were removed or sold by him, with the intent to evade the payment of the tax. This is in accordance with the language of the statute, and the averment in the declaration. As I have remarked before, the question of intent is exclusively for the jury, to be arrived at by a due regard to the evidence.

It seems unnecessary for the court to extend its remarks. I close by reminding the jury that the case before them is important, as it affects the financial interests of the government, and the pecuniary interests of the defendant. If the jury find for the United States, their verdict must be for a large sum. It must be, in the aggregate, four dollars on each gallon of spirits removed or sold by defendant, claimed by the United States as being 44,500 gallons. The importance of the case will require of the jury their calm and deliberate consideration, and if they find the evidence fairly implicates the defendant in the frauds charged, they will not hesitate to render a verdict accordingly, without reference to consequences. It deeply concerns the interests of the government, as well as our national character, that these frauds on the revenue should be exposed, and the laws efficiently executed.

The jury reported that they were unable to agree, and were discharged.